UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN STANSBERRY, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. CV 09-08567-DTB <br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT |

**INTRODUCTION**

On November 20, 2009, Plaintiff Robin Stansberry ("Plaintiff") filed a complaint ("Compl.") alleging damages caused by the negligence of Defendant United States of America ("Defendant"). On February 5, 2010, Defendant filed an Answer to the Complaint ("Answer"). The parties' consent to the undersigned Magistrate Judge was approved and ordered on October 29, 2010. On January 20, 2011, Defendant filed a Motion for Summary Judgment along with a supporting Memorandum of Points and Authorities (the "Motion" or "MSJ") and a Declaration of Linda Bryant in Support of the Motion ("Bryant Decl.") with corresponding exhibits. In addition, Defendant filed a Statement of Uncontroverted Facts and Conclusions of Law ("Statement"). Plaintiff filed an Opposition to the Motion

("Opp.") with corresponding exhibits ("Opp. Exh.") on February 3, 2011. Defendant filed a Reply in Support of the Motion ("Reply") on February 10, 2011. A hearing on the Motion was held on February 23, 2011 and counsel for both Plaintiff and Defendant appeared and argued their respective opinions. This matter is now ready for decision. For the reasons set forth below, the Motion is granted in part and denied in part.

## ALLEGATIONS IN THE COMPLAINT

On December 26, 2006, while employed as an operating engineer by Cal-Pac Engineering ("Cal-Pac"), Plaintiff suffered injuries allegedly caused by Defendant's negligence. (Compl. at 3; Opp. Exh. 1 at 32, 78.) Defendant had hired Cal-Pac to demolish an asphalt parking lot located on the March Air Reserve Base. (Compl. at 3.) Plaintiff was using a loader with a bucket to excavate the asphalt of the existing parking lot, while leaving the underlying dirt grade intact. (Id.) As Plaintiff drove, his vehicle came to a sudden and complete stop, throwing Plaintiff out of his seat and into contact with the steering wheel, injuring him. (Id.) After exiting the loader, Plaintiff observed that his bucket had come into contact with a concrete-encased pole that had been buried underneath the asphalt surface (the "buried pole")[1]. The buried pole appeared to be a car stop bollard that had been cut off and left beneath the asphalt. (Id.) Plaintiff alleges there were no markings in the area to warn of the existence of the buried pole and that Defendant had not provided any warning as to its existence. (Id.)

/ / /

/ / /

---

[1] The buried pole is referred to by the parties variously as the "fifth pole" (Opp at 4, 8; Reply at 2) or the "object" (MSJ at 14; Reply at 7, 8). The Court defines it for consistency and ease of explanation.

Plaintiff alleges that Defendant and/or its agents, servants and/or employees, had either created, or had actual or constructive notice of the existence of the buried pole. (Compl. at 3.) Plaintiff asserts that the buried pole constituted a dangerous condition and a "hidden trap" for workers who were otherwise using the premises with due care. (Id.) Plaintiff alleges that the negligence of the agents and employees of Defendant in connection with the creation and continued existence of the buried pole caused his injury. (Compl. at 3-4.)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In its Motion, Defendant argues that it is entitled to summary judgment because Defendant could not be liable under any theory of negligence liability.

First, Defendant asserts that sovereign immunity bars Plaintiff's negligence claim to the extent it is based upon Defendant's hiring of an independent contractor, as the United States has not waived sovereign immunity for claims based upon such theory. (MSJ at 8.) Plaintiff concedes that the Defendant has not waived its sovereign immunity with respect to any negligence on the part of Cal-Pac, but maintains that Defendant has waived its sovereign immunity for its own negligence as a landowner. (Opp. at 7.)

Defendant asserts that, as the hirer of an independent contractor, such as Cal-Pac, the United States is not liable in tort for work-related injuries sustained by an employee when the contractor is insured by a policy of workers' compensation insurance. (MSJ at 10, citing Privette v. Superior Court, 5 Cal.4th 689, 21 Cal.Rptr.2d 72 (1993).) Because Plaintiff's injuries resulted from the performance of "work that had some inherent dangers or peculiar risks to those engaged in the activity, including risks presented by striking objects buried in the soil beneath the pavement being removed," Defendant maintains that there is no basis for recovery from the United States. (MSJ at 11.) Defendant asserts that it did not retain control of the "operative details" of the work being performed, including the manner in which Plaintiff

operated the loader, and that Cal-Pac determined and controlled all of the means by which such work was accomplished. (Id.) Defendant disclaims liability for injuries sustained as a result of "an obvious work hazard on the premises created during the performance of the contracted work for which taking precautions was delegated to the contractor." (MSJ at 12.) Again, plaintiff appears to concede that Defendant is not liable to the extent plaintiff's injury was caused by the negligent performance of the contractually obligated duties on the part of Cal-Pac. (Opp. at 7.) Plaintiff appears to agree with Defendant that the Privette doctrine would immunize Defendant from such liability and otherwise foreclose liability on the part of Defendant as the hiring party. (Id.)

Second, Defendant asserts that it cannot be liable as the owner of the premises upon which Plaintiff was injured, citing to Kinsman v. UNOCAL Corp., 37 Cal. 4th 659, 36 Cal. Rptr. 3d 495 (2005) in support its position. Defendant asserts that there can be no recovery under a premises liability theory because the buried pole was not a hidden danger, but, rather, was an object made hazardous only because of the activity of Plaintiff's employer on the premises. (MSJ at 14.) Alternatively, Defendant argues that Cal-Pac necessarily was, or should have been, aware of the buried pole, since "subsurface obstructions" were "obvious and known" hazards of which Cal-Pac was placed on notice pursuant to the terms of Cal-Pac's Contract with Defendant, and that Defendant delegated responsibility for taking precautions for such hazards to Cal-Pac. (Id.)

In support of its Motion, Defendant submits evidence of its contract with Cal-Pac, whereby Cal-Pac agreed to perform the demolition of the parking lot. Specifically, Defendant cites to contract number FA4664-05-D-0002, which was awarded by the United States on September 8, 2005 (the "Contract"). (MSJ at 4; Bryant Decl. ¶ 2; Exh. 1 thereto.) The Contract, which was amended at various times (MSJ at 4, 6; Bryant Decl. At ¶ 7), included a Statement of Work, and also incorporated various other documents, including certain clauses from the Federal

Acquisition Regulation[2] ("FAR") and portions of the Code of Federal Regulations. (MSJ at 7-8; Bryant Decl. ¶¶ 10-11.)

Defendant cites to two specific clauses in the Contract, FAR §§ 52.236-2 and 52.236-3, in support of its argument that Cal-Pac was, or should have been, aware of subsurface hazards such as the buried pole. (MSJ at 14; Reply at 8.) Defendant argues that the terms of FAR 52.236-2 put Cal-Pac on notice of the potential for differing site conditions, including "subsurface or latent physical conditions at the site" and "unknown physical conditions at the site, of an unusual nature, which differ[ed] materially from those ordinarily encountered." In addition, Defendant argues that FAR 52.236-3 put Cal-Pac on notice of "uncertainties of . . . physical conditions at the site [and . . .] the character, quality, and quantity of surface and subsurface materials or obstacles to be encountered."

Based primarily on these two clauses, Defendant argues that Cal-Pac was placed on notice of the possible existence of subterranean obstacles, such as the buried pole, and that Defendant thereby complied with its duty under Kinsman.

**PLAINTIFF'S OPPOSITION**

In response to Defendant's Motion, Plaintiff asserts that the Defendant has not met its burden of showing that, pursuant to Kinsman, the government neither knew, nor should have known, of the existence of the buried pole. (Opp. at 9.) Plaintiff argues that Cal-Pac had no reasonable way of knowing that the buried pole was located under the parking lot, as the government had provided Cal-Pac with blueprints for the demolition of the parking lot which showed four existing bollard poles at the site, but did not disclose the existence of the buried pole. (Opp. at 4, 9.)

---

[2] The Federal Acquisition Regulation is a set of uniform policies and procedures for the acquisition of supplies and services by executive agencies. Contract Management, Inc. v. Rumsfeld, 434 F.3d 1145, 1148 n. 4 (9th Cir. 2006).

Plaintiff also alleges that Defendant marked the location of known hazards (including underground utilities) at the site with orange paint, but, again, did not mark the location of the buried pole. (Id.) Plaintiff asserts that Cal-Pac and the plaintiff relied on Defendant's blueprints and site markings in conducting the demolition of the parking lot, and, as such, could not have reasonably known of the buried pole. (Opp. at 9.)

## DISPUTED FACTS

The following disputed facts are material and relevant to plaintiff's claim. There is conflicting evidence as to whether the United States knew, or should have known, of the existence of the buried pole, for purposes of warning Cal-Pac and its employees, including plaintiff. Defendant maintains that the buried pole didn't constitute a "hazard," and only became such when plaintiff struck it. (MSJ at 14; Statement at 12.) Alternatively, Defendant asserts that Cal-Pac should have been aware of the buried pole, as the terms of the Contract put Cal-Pac on notice of possible subsurface "site conditions" such as the buried pole. (MSJ at 14-15; Statement at 12.)

Plaintiff, on the other hand, asserts that Defendant provided Cal-Pac with blueprints for demolition of the parking lot, which indicated the location of other poles and potential hazards, and that such known hazards were also physically marked in orange paint at the site. (Opp. at 4; Decl. John Girardi in support thereof, Opp. Exh. 1; Deposition of Robin Stansberry, p. 78, lns. 14-17; p. 32, lns. 12-18; p. 48, lns. 18-25l p. 49, lns. 1-7; p. 57, lns. 8-16; and p. 170, lns. 6-12.) Plaintiff asserts Cal-Pac neither knew of, nor could have reasonably ascertained, the existence of the buried pole, as it reasonably relied on Defendant's representations as to the location of existing hazards at or beneath the parking lot, as denoted by the blueprints and paint markings. (Opp. at 9.)

///

6

# DISCUSSION

## I. Summary judgment standards

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Celotex, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. Id. The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252. See also William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 14:144.

A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party. Barlow v. Ground, 943

F.2d 1132, 1135 (9th Cir. 1991); T.W. Electrical Serv. Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

The FTCA provides that the United States may be held liable for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be held liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The United States is to be held liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. See also United States v. Olson, 546 U.S. 43 (2005).

The Court thus examines Plaintiffs' tort claims under California law, as the acts alleged occurred within California. Bressi v. Ford, 575 F.3d 891, 900 n. 9 (9th Cir. 2009).

## II. Summary judgment is warranted to the extent Plaintiff's claim of negligence is based upon Defendant's status as the hirer of Cal-Pac as an independent contractor.

The Court concurs with the parties to the extent that they appear to agree that the Privette doctrine forecloses liability of the Defendant in its capacity as the hirer of Cal-Pac, and, relatedly, that the government has not waived its sovereign immunity with respect to such liability. As stated by the California Supreme Court, "[w]hen ... injuries resulting from an independent contractor's performance of inherently dangerous work are to an employee of the contractor, and thus subject to workers' compensation coverage, the doctrine of peculiar risk affords no basis for employee to seek recovery of tort damages from the person who hired the contractor but did not cause the injuries." Privette, 5 Cal.4th at 731.

In Privette, the California Supreme Court significantly limited the liability of a hirer of an independent contractor to third parties injured in the employ of such

independent contractors. The Privette court precluded such liability for harm caused by the failure of a contractor to exercise reasonable care by failing to take special precautions against even peculiar risks, when "injuries resulting from an independent contractor's performance of inherently dangerous work are to an employee of the contractor, and thus subject to workers' compensation coverage." Id. at 730. Thus, Privette precludes employees (such as Plaintiff) of independent contractors (such as Cal-Pac) from seeking recovery of tort damages from the person "who hired the contractor but did not cause the injuries." Id. Following Privette, California law permits a principal to delegate its duty to provide a reasonably safe work place to a contractor, even where "peculiar risks" are involved, as long as the contractor's employees are covered by workers' compensation.

Thus, to the extent plaintiff seeks recovery on such a theory of negligence, the Court GRANTS Defendant's Motion for Summary Judgment on this ground, as the Court finds that there is no genuine issue of material fact such that the United States could be liable to Plaintiff under the Privette doctrine for his injury. Relatedly, the Court finds that the government has not waived its sovereign immunity as to this theory of liability, and, as such, is immune from liability on such a theory.

### III. Summary judgment is not warranted with respect to Plaintiff's negligence claim against the United States based on its status as landowner.

Plaintiff's premises liability claim is based on his allegation that the government, in its capacity as the landowner, knew, or should have known, of the existence of the buried pole, and that it failed to either warn him or otherwise prevent his injury. (Compl. at 3; Opp. at 9.)

In California, a landowner that hires an independent contractor may be liable to the contractor's employee, "even if it does not retain control over the work, if (1) it knows or reasonably should know of a concealed, pre-existing hazardous condition on its premises; (2) the contractor does not know and could not reasonably ascertain

the condition; and (3) the landowner fails to warn the contractor." Kinsman v. Unocal Corp., 37 Cal.4th at 675. "[W]here the hazard is concealed from the contractor, but known to the landowner, the landowner cannot effectively delegate to the contractor responsibility for the safety of its employees if it has not communicated crucial information to the contractor." Padilla v. Pomona Coll., 166 Cal.App.4th 661, 82 Cal.Rptr.3d 869, 881-82 (Cal.Ct.App.2008).

### A. There is a question of fact as to whether the buried pole constituted a hazard.

Defendant contends that Kinsman does not apply to the instant case because the buried pole was not a hidden danger on the premises. (MSJ at 14.) Defendant contends that "[t]o the extent that the [hidden pole] was 'hidden' or 'concealed' before digging operations commenced, this object, in its buried state, was not a hazard to anyone coming upon the premises [and] only became a hazard during . . . operations . . . conducted by [Cal-Pac]." (Id.) As such, the hazard was 'created by the independent contractor itself' and Defendant cannot be liable. (Id.)

While the buried pole may not have been a hazard to a typical invitee, such as a pedestrian, this does not preclude the Defendant's liability to plaintiff as the employee of Defendant's contractor pursuant to Kinsman. As stated by the Kinsman court:

> [T]he basic policy of this state set forth by the Legislature in section 1714 of the Civil Code is that everyone is responsible for an injury caused to another by his want of ordinary care or skill in the management of his property . . .. The proper test to be applied to the liability of the possessor of land in accordance with section 1714 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in

> <u>the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative</u>. . . . Where the occupier of land is aware of a concealed condition involving in the absence of precautions an unreasonable risk of harm to those coming in contact with it and is aware that a person on the premises is about to come in contact with it, the trier of fact can reasonably conclude that a failure to warn or to repair the condition constitutes negligence. Whether or not a guest has a right to expect that his host will remedy dangerous conditions on his account, he should reasonably be entitled to rely upon a warning of the dangerous condition so that he, like the host, will be in a position to take special precautions when he comes in contact with it.

Kinsman, 37 Cal. 4th at 672-73 (internal citations and quotations omitted) (emphasis added). Thus, the relevant inquiry is whether Defendant, in the management of its property, acted reasonably in view of the probability of injury to others.

Here, the Court concludes there is a question of fact as to whether the United States acted reasonably in its capacity as the owner of the premises. To the extent Defendant argues that the buried pole was, in essence, an inert body which only became a "hazard" when plaintiff encountered it with his excavator - in essence denying that the buried pole was a hazard until plaintiff struck it - the Court is unpersuaded. The stated public policy of California, as codified in Civil Code § 1714, and as recounted by the court in Kinsman, is to hold a person responsible for the consequences of his lack of ordinary care, including, *inter alia*, in the management of such person's property. (See Kinsman at 673.) (See also Krongos v. Pacific Gas & Electric Co., 7 Cal.App.4th 387, 393 (1992) (duty to protect against even obvious hazards). If the Court were to agree with Defendant's argument, virtually no undisclosed hazard would be a basis for landowner liability, since, by

definition, such a hazard only becomes a hazard when it is encountered by someone and causes them injury. The Court concludes that a question of fact remains as to whether Defendant acted reasonably in the management of its property with respect to the buried pole and its role in Plaintiff's injury. Stated another way, the Court concludes that there remains a triable issue of fact as to whether the buried pole constituted a concealed, pre-existing hazardous condition of which the United States was, or should have been, aware.

### B. There is a question of fact as to whether the United States delegated its duty, as a landowner, to warn Cal-Pac and its employees of hazards or otherwise placed Cal-Pac on reasonable notice of hazards which were known, or which should have been known.

Defendant also argues that Cal-Pac necessarily was, or should have been, aware of thes possible presence of subterranean hazards, such as the buried pole, because Defendant placed Cal-Pac on notice of the potential for subsurface hazards through certain clauses contained in Cal-Pac's Contract. Defendant also argues that its conduct was consistent with such a conclusion, citing as an example Defendant's cautionary warning that drawings provided to Cal-Pac with the location of existing underground lines were "to be regarded as approximate only," (Bryant Decl. ¶ 3 at 83). Defendant places much emphasis on the terms of the Contract, which it contends "placed the responsibility for the site squarely in the hands of [Cal-Pac]." The two specific clauses relied upon by the government for this argument are from the FAR, to wit:

- § 52.236-2, which allegedly put Cal-Pac on notice of the potential for differing site conditions, including "subsurface or latent physical conditions at the site" and "unknown physical conditions at the site, of an unusual nature, which differ[ed] materially from those ordinarily encountered"; and

|   |   | - | § 52.236-3, which allegedly put Cal-Pac on notice of "uncertainties of . . . physical conditions at the site [and . . .] the character, quality, and quantity of surface and subsurface materials or obstacles to be encountered." |

(MSJ at 7; Bryant Decl. ¶ 10.)

Under California law, the interpretation of a written contract is a judicial function. (Pacific Gas & Electric Co. V. G.W. Thomas Drayage & Rigging, 69 Cal.2d 33, 39-40, 69 Cal. Rptr. 561, 442 P.2d 641 (1969). To ascertain the meaning of a contract term, the court must give effect to the mutual intention of the contracting parties at the time of contracting (Cal. Civ. Code § 1636), and the language of the contract is to govern its interpretation, to the extent possible. (Cal. Civ. Code §§ 1638, 1639). The entirety of a written contract is to be reviewed as a whole in order to give effect to every part, and each term may be used to assist in the interpretation of other terms (Cal. Civ. Code § 1641).

Thus, in order to interpret the intention of the parties with regard to the clauses relied upon by Defendant, the Court must look to the language of the entire Contract.

Here, the Contract was comprised of several parts, and incorporated several standardized clauses from the FAR. Defendant cites to certain of these terms for the proposition that responsibility for the site was "placed squarely in the hands of Cal-Pac Engineering." (MSJ at 7.) The specific clauses cited by Defendant are, in relevant part, as follows:

| | 1. | FAR § 52.236-2 Differing Site Conditions |
| | (a) | The Contractor shall promptly, and before the conditions are disturbed, give a written notice to the Contracting Officer of - |
| | | (1) Subsurface or latent physical conditions at the site which differ materially from those indicated in this contract; or |
| | | (2) Unknown physical conditions at the site of an unusual |

|  |  | nature, which differ materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the contract. |
|---|---|---|

        (b)    The Contracting Officer shall investigate the site conditions promptly after receiving the notice. If the conditions do materially so differ and cause an increase or decrease in the Contractor's cost of, or the time required for, performing any part of the work under this contract, whether or not changed as a result of the conditions, an equitable adjustment shall be made under this clause and the contract modified in writing accordingly . . . .

    2.    FAR § 52.236-3 Site Investigation and Conditions Affecting the Work.

        (a)    The Contractor also acknowledges that it has satisfied itself as to the character, quality and quantity of surface and subsurface materials or obstacles to be encountered insofar as this information is reasonably ascertainable from an inspection of the site, including all exploratory work done by the government, as well as from the drawings and specifications made a part of this contract, any failure of the Contractor to take the actions described and acknowledged in this paragraph will not relieve the Contractor from responsibility for estimating properly the difficulty and cost of successfully performing the work or for proceeding to successfully perform the work without additional expense to the government.

Reading the entire pertinent portions of these clauses, the Court concludes that they pertain to the cost and/or pricing of the Contract, and are not a mechanism for shifting liability. Indeed, the language of § 52.236-2 specifically refers to "an equitable adjustment" of the cost or time of performance, and thus appears to pertain

to change orders to the Contract, requiring Cal-Pac to review the site "before conditions are disturbed." Assuming Cal-Pac did so, it would not have discovered the buried pole, and even if it had, § 52.236-5 only provides for an equitable adjustment to the Contract amount, and does not reference the liability of the parties. Similarly, the text of § 52.236-3 references possible subsurface obstacles which may be "reasonably ascertainable from an inspection of the site," and does not confer any blanket immunity upon the government for any obstacles not discovered from such an inspection.

Defendant has not adduced evidence that Cal-Pac could have "reasonably" ascertained the existence of the buried pole through an inspection of the premises, or that it any way breached either of the cited clauses.

Moreover, the Contract does include a clause pertaining to liability for damage to underground utilities, which the government failed to cite to in its Motion. Specifically, § 15.3 of the Statement of Work states as follows:

> SW - 15.3   The utilities shown on the digging permit or marked on the ground at the construction site are within 3' (horizontal) of the location shown. Any utility which is not shown and/or is not within the 3' tolerance (horizontal) will be repaired by the government or repaired by the contractor at government expense.

As such, Defendant retained liability for damage to underground utilities which was due to the fault of Defendant, *i.e.*, when such utilities were damaged because they were more than three feet from the location of such as represented by the government.

Moreover, the government, in its capacity as the owner, provided Cal-Pac with blueprints for the site (Stansberry Depo p. 57, lns. 1-21), and either the government or its agents marked the parking lot with orange paint to denote visible hazards, including underground pipes and utility lines. (Stansberry Depo., p. 37, lns. 24-25; p. 38, lns. 1-9.) The Plaintiff testified that the significance of the marked hazards was

that he would not use the excavator near the marked hazards, but, rather, laborers would use picks and shovels to manually excavate the parking lot near such hazards to avoid damaging them. (Stansberry Depo. at p. 38, lns. 10-14.) Therefore, it would appear that the government did not place the responsibility for the site "squarely in the hands of Cal-Pac", as it took affirmative steps to advise Cal-Pac of known hazards, both above and below ground, and retained contractual liability for its errors, at least to a limited extent.

Thus, when the conduct of the government, coupled with the entirety of the contract terms, is reviewed as a whole, the Court concludes that a material fact exists as to whether Defendant delegated any of its duty as landowner to Cal-Pac, or whether Cal-Pac was somehow placed on reasonable notice as to the possible existence of subterranean obstacles, such as the buried pole. The Court is unpersuaded that the Contract terms somehow delegated the duty of Defendant arising out of its status as the landowner, under Kinsman, to Cal-Pac.

## CONCLUSION

In accordance with the foregoing, the government's Motion for Summary Judgment is GRANTED with respect to the claim for negligent supervision of the independent contractor, Cal-Pac and DENIED with respect to the negligence claim for landowner liability.

DATED: April 15, 2011

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE